UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GABRIEL RIVAS ROSALES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM P. BARR, et al.,<br><br>Defendants. | Case No. 20-cv-00888-EMC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, AND DENYING PLAINTIFFS' MOTION FOR JUDICIAL NOTICE**<br><br>Docket Nos. 4, 24 |

## I.     <u>INTRODUCTION</u>

Petitioners, Jose Gabriel Rivas Rosales, Reyna Romero Lopez, and their minor child E.R.R. (hereinafter, collectively, "Petitioners"), seek a preliminary injunction staying the use of Video Teleconferencing ("VTC") in their asylum case now before an Immigration Judge,[1] pending a decision on their petition to this Court for a Writ of Mandamus. That Writ asks that this Court "enjoin Respondents from utilizing Video-Teleconference . . . against the non-detained Petitioners."

Respondents, William P. Barr and James McHenry, are being sued in their official capacities as the Attorney General of the Department of Justice and Director of the Executive Office of Immigration Review ("EOIR") respectively. Petitioners allege that the use of VTC in their asylum case violates their due process rights. The Writ also contends that the immigration courts are scheduling VTC hearings for asylum cases in which the applicants are labeled as

---

[1] Petitioners asylum case is based on their assertion that they fear for their lives and safety in El Salvador, where one of their family members has been killed by the 18th Street gang. *See* Form I-589 at 5, Exh. B, Docket No. 1. In their asylum application, they declare that their lives have been threatened by MS-13 gang members for having ties to the United States. *Id.*

1  "family units" from Mexico or Central America on a super-expedited basis, and that the policies
2  and procedures related to this practice violate the Equal Protection Clause of the Fifth
3  Amendment.

4  For the reasons discussed below, this Court **DENIES** Petitioners' Motion for a Preliminary
5  Injunction and **DISMISSES** the action for lack of subject-matter jurisdiction. In addition, because
6  the Court lacks subject-matter jurisdiction over the case, Petitioners' request for judicial notice of
7  certain documents, which go to the merits of their claim, is moot. As such, the request for judicial
8  notice is **DENIED**.

## II. BACKGROUND

Petitioners are a family of Salvadoran-nationals who arrived in the United States by making an application for admission at the San Ysidro port of entry on or around December 7, 2018. Statement of Facts ¶ 2, Mot. Prelim. Inj., Docket No. 3. Petitioners did not possess valid immigration entry documents. *Id.* ¶ 3. The United States Department of Homeland Security ("DHS") issued Petitioners Notices to Appear ("NTA"), dated December 9, 2018, in immigration court. *Id.* ¶ 4. DHS filed the NTAs with the Immigration Court on February 14, 2019. Declaration of Elizabeth Burgus ("Burgus Decl.") ¶ 3, Docket No. 18. DHS designated Petitioners' case as a family-unit case. *Id.* ¶ 4. On May 7, 2019, Petitioners appeared in-person at their first master (or "preliminary") calendar hearing, at which they requested a continuance to seek representation. *Id.* ¶ 5.

A further master calendar hearing for Petitioners' asylum case was scheduled for September 30, 2019 in front of an immigration judge ("IJ") who presides over non-detained matters. Statement of Facts ¶ 6, Mot. Prelim. Inj., Docket No. 3. Petitioners requested another continuance of that hearing, which the IJ granted, and Petitioners' master calendar hearing was reset for November 25, 2019. Burgus Decl. ¶ 7. In the meantime, Petitioners, through Mr. Rivas Rosales, applied for asylum by filing a I-589 application with the EOIR located in San Francisco on or about November 12, 2019. Statement of Facts ¶ 5, Mot. Prelim. Inj., Docket No. 3. Thereafter, Petitioners were scheduled for an individual (or "merits") hearing on February 6, 2020. *Id.* The hearing notice did not indicate the courtroom or judge assigned to the case. *Id.* On

January 22, 2020, Petitioners filed a motion to continue the February 6, 2020 hearing; that motion was denied. Burgus Decl. ¶ 8.

Immigration Judge Gilda Terrazas, an IJ in the Sacramento Immigration Court, was chosen to preside over Petitioners' case via VTC. *Id.* ¶ 9. On January 23, 2020, Petitioners filed a motion to quash the use of VTC in their case, but the motion was denied on January 28, 2020. *Id.*; Mot. Quash, Exh. 2, Pet. Writ Mandamus, Docket No. 1; Order of the Immigration Judge, Exh. 2, Pet. Writ Mandamus, Docket No. 1. The denial is brief, merely noting: "Video Conf. Not a Violation of Respondents['] Due Process Rights." *Id.*

Counsel for Petitioners filed a declaration noting that he has filed six such motions to quash VTC in immigration proceedings; two were granted "for good cause," while "three were denied 'without prejudice, with opportunity to renew should prejudice arise during the hearing' and one was denied for 'lack of good cause.'" Declaration of Gautam Jagannath, Exh. H ¶ 26, Pet. Writ Mandamus, Docket No. 1. The declaration does not specify whether the denial in this case was one of those six, and if so, which type of denial it was.

On February 5, 2020, Petitioners' filed in this Court an Emergency Petition for Writ of Mandamus, an Emergency Motion for Temporary Restraining Order ("TRO"), and a Motion for Preliminary Injunction. *See* Docket Nos. 1–3. The Court denied Petitioners TRO, which sought to enjoin the use of VTC in their hearing on February 6, 2020, *see* Docket No. 12, and on February 6, 2020, Petitioners appeared before Immigration Judge Terrazas via VTC for their individual hearing, *see* Burgus Decl. ¶ 10. At that hearing, Petitioners requested a continuance to pursue this district court litigation and to obtain a psychological evaluation of Petitioner Rivas-Rosales. *Id.* Judge Terrazas denied Petitioners' continuance request, conducted the hearing, and took Petitioners' testimony regarding their asylum application. *Id.* The hearing was adjourned after three hours of testimony; Judge Terrazas found there was insufficient time to complete the hearing, *id.* ¶ 10, and scheduled a master calendar hearing for March 2, 2020 to identify a suitable date for another individual hearing. *Id.* ¶ 11. The next merits hearing is scheduled for July 2020. *See* Docket No. 20.

Currently before this Court is Petitioners' Motion for Preliminary Injunction, Docket No. 3

3

1  and Petitioners' Motion for Judicial Notice, Docket No. 24. A hearing for Petitioners' Motion for
2  Preliminary Injunction was scheduled for March 26, 2020 but has been vacated in light of the
3  COVID-19 emergency and General Order 72. *See* Docket No. 23.[2] The matter was taken under
4  submission on the papers.

## III. DISCUSSION

### A. Legal Standard

A court "must dismiss the action" if it "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3). Likewise, "[a] district court may not grant a preliminary injunction if it lacks subject matter jurisdiction over the claim before it." *Shell Offshore Inc. v. Greenpeace, Inc.*, 864 F. Supp. 2d 839, 842 (D. Alaska 2012), *aff'd,* 709 F.3d 1281 (9th Cir. 2013). Indeed, a motion for a preliminary injunction is moot if the court lacks subject matter jurisdiction. *Id.* Thus, the jurisdictional challenge raised by the Government must be considered before the Court can reach the merits of Petitioners' motion for a preliminary injunction. *See Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 815 (9th Cir. 2017) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case.").

### B. Analysis

#### 1. Subject-Matter Jurisdiction

##### a. Petitioners' Proposed Bases for Jurisdiction

Federal courts are courts of limited jurisdiction; the Court must first determine whether it possesses subject-matter jurisdiction to hear Petitioners' claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998); *Bell v. Hood*, 327 U.S. 678, 682 (1946). Petitioners bear the burden of establishing subject-matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

Petitioners identify six statutes that they contend furnish this Court with subject-matter

---

[2] The Court notes that Petitioners filed a Reply brief that was nine pages over the fifteen-page limit for Reply briefs and did so without seeking leave of the Court or filing a stipulation with opposing Counsel. *See* Civ. L.R. 7-3(c). The Court urges Counsel to become familiar with the Local Rules, as sanctions may apply for failure to comply with them.

4

jurisdiction over Petitioners' claims: 28 U.S.C. § 1348 ("Banking Association As Party"), 28 U.S.C. § 2201–02 ("Declaratory Judgment Act"), 28 U.S.C. § 1651 ("Writs"), 5 U.S.C. § 551 *et seq.* plus § 701 *et seq.* ("Administrative Procedure Act"), 28 U.S.C. § 1331 ("Federal Question Jurisdiction"), and 28 U.S.C. § 1361 ("Action to Compel An Officer of the United States to Perform His Duty"). However, none are availing.

Petitioners first offer 28 U.S.C. § 1348, *see* Pet. Writ Mandamus ¶ 14, Docket No. 1, but they appear to have identified the wrong section because this statute only applies when the United States brings an action against a national banking association. *See* 28 U.S.C. § 1348 ("The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association"). This case was not brought by the United States against a national banking association; therefore, it does not furnish this Court with jurisdiction.[3]

Petitioners next offer 28 U.S.C. § 2201–02. However, the Declaratory Judgment Act also does not confer jurisdiction because it creates a remedy, not an independent basis for federal jurisdiction. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehrler*, 499 U.S. 432 (1991) ("The declaratory judgment statute … does not create an independent basis for federal jurisdiction"); *see also In re Packaged Seafood Products Antitrust Litigation*, 338 F. Supp. 3d 1079, 1097 (quoting *Guaranty Nat'l Ins. Co. v. Gates*, 916 F.2d 508, 511 (9th Cir. 1990)) ("The Declaratory Judgment Act is a 'procedural device only; it does not confer an independent basis of jurisdiction on the federal court.'").[4]

Third, Petitioners assert that 28 U.S.C. § 1651 confers subject matter jurisdiction. However, the All Writs Act "does not confer original jurisdiction, but rather, prescribes the scope of relief that may be granted when jurisdiction otherwise exists." *Hamilton v. Nakai*, 453 F.2d 152, 157 (9th Cir. 1971); *see also Al Otro Lado, Inc. v. McAleenan*, --- F. Supp. 3d ---, No. 17-

---

[3] In their Reply, Petitioners do not respond to the Government's arguments about Section 1348 or even mention the statute.

[4] In their Reply, Petitioners do not respond to the Government's arguments about Sections 2201–02 or even mention the statute.

5

1  CV-02366-BAS-KSC, 2019 WL 6134601, at *11 (S.D. Cal. Nov. 19, 2019) (quoting the language from *Nakai*). Additionally (as is discussed in greater detail below), in the context of removal proceedings, Section 1651 is expressly displaced by 8 U.S.C. § 1252(b)(9). *See* 8 U.S.C. § 1252(b)(9) ("no court shall have jurisdiction … by section … 1651 …"). Thus, the All Writs Act does not confer jurisdiction to this Court over the matter.[5]

Fourth, Petitioners contend that two sections of the Administrative Procedure Act ("APA") give this Court jurisdiction. *See* Petitioners' Writ of Mandamus at 3 (citing 5 U.S.C. § 551 *et seq.* and § 701 *et seq*). However, the APA is not a jurisdiction-conferring statute and does not directly grant subject matter jurisdiction to federal courts. *See, e.g., Califano v. Sanders*, 430 U.S. 99, 105–07 (1977) ("the APA nowhere contains an explicit grant of jurisdiction to challenge agency action in the federal courts."); *Air Courier Conference of America v. American Postal Workers Union, AFL-CIO, et al.*, 498 U.S. 517, 523 (1991) (the judicial review provision of the APA is not jurisdictional); *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998) ("[I]t is well settled that the APA does not independently confer jurisdiction on the district courts."); *City of Oakland v. Holder*, 901 F. Supp. 2d 1188, 1192 (N.D. Cal. Feb. 14, 2013) ("The APA does not independently confer jurisdiction on district courts; rather it prescribes standards for judicial review of an agency action once jurisdiction is otherwise established."). Neither section of the APA cited by Plaintiffs furnishes this Court with subject-matter jurisdiction over Petitioners' claims.[6]

Petitioners also argue that 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1361 (mandamus) confer jurisdiction. Petitioners assert that there is federal question jurisdiction because, among other things, their claims involve due process rights and equal protection violations arising under the Fifth Amendment of the U.S. Constitution. *See* Count Four, Causes of Action, Pet. Writ Mandamus at 13, Docket No. 1. They also assert that the Court has mandamus

---

[5] In their Reply, Petitioners do not respond to the Government's arguments about Sections 1651 or even mention the statute, except to quote 8 U.S.C. § 1252.

[6] In their Reply, Petitioners do not respond to the Government's arguments about Sections 551 and 701.

6

jurisdiction because they have filed a writ of mandamus requesting that this Court declare Respondents' asylum-scheduling policies unlawful and enjoin the use of VTC at their hearings. *See* Prayer for Relief ¶ 2–3, Pet. Writ Mandamus at 14, Docket No. 1. However, as explained below, the judicial review provisions of the Immigration and Nationality Act ("INA") foreclose jurisdiction pursuant to Sections 1331 and 1361 and deprive this Court of jurisdiction over Petitioners' case. *See Am. Fed'n of Gov't Emps., AFL*-CIO, 929 F.3d at 754 (noting that Section 1331 is a general rule that may be circumscribed by Congress); *see also, e.g.*, *Orabi v. Chertoff*, 562 F. Supp. 2d 1377, 1382 (N.D. Ga. 2007) ("Mandamus jurisdiction does not exist in this case. . . . [Section] 1252(a)(2)(B) explicitly exempts § 1361 from bestowing jurisdiction.").

### b. The INA Deprives This Court of Jurisdiction

The INA assigns to the immigration courts the power to determine the removability of an individual from the United States. *See* 8 U.S.C. § 1229a. IJs preside over these removal proceedings. *Id.* § 1229a(a)(2). Individuals can contest their removability or seek relief from removal in these proceedings. *See*, *e.g.*, *id.* §§ 1158, 1229b (discussing examples of types of relief from removal). One of the ways an individual can seek relief from removal is by filing a defensive asylum application, as Petitioners have done here. *Id.*

Historically, removal proceedings were conducted in-person, but as technology progressed, Congress allowed for the use of VTC. *See id.* § 1229a(b)(2)(A)(iii) ("The proceeding may take place . . . through video conference."). This change occurred in 1996, when Congress amended the INA—through the passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRARA")—to expressly provide that "[removal] proceeding[s] may take place … through video conference." *Id.* An individual's consent is not necessary to conduct evidentiary hearings on the merits via VTC. *Id.* In that regard, VTC hearings are treated similarly to in-person hearings (as compared to hearings conducted only by telephone, to which an individual must consent). *See* 8 U.S.C. § 1229a(b)(2)(B) ("An evidentiary hearing on the merits may only be conducted through a telephone conference with the consent of the [undocumented person] after the [undocumented person] has been advised of the right to proceed in person or through video conference.").

Section 1252 of the INA contains provisions that channel judicial review of orders of removal to federal courts of appeal. *See* 8 U.S.C. § 1252. Three provisions of Section 1252 pertain to whether this Court has jurisdiction to hear direct or indirect challenges to removal proceedings. *See* 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), 1252(g). The relevant parts of § 1252 are set out below.

> (a)(5) Notwithstanding any other provision of law, ... a petition for review filed with an appropriate court of appeals in accordance with this section *shall be the sole and exclusive means for judicial review of an order of removal* entered or issued under any provision of this chapter, except as provided in subsection (e).
>
> (b)(9) Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an [undocumented individual] from the United States under this subchapter shall be available only in judicial review of a final order under this section*. Except as otherwise provided in this section, *no court shall have jurisdiction*, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 161 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), *to review such an order or such questions of law or fact*.
>
> (g) Except as provided in this section and notwithstanding any other provision of law ... no court shall have jurisdiction to hear any cause or claim by or on behalf of any [undocumented persons] *arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [undocumented persons] under this chapte*r.

8 U.S.C. §§ 1252(a)(5) (emphasis added), 1252(b)(9) (emphasis added), 1252(g) (emphasis added). These provisions circumscribe this Court's ability to review removal proceedings and channel appeals of the immigration administrative process directly to the courts of appeal. *See, e.g., Duron v. Johnson*, 898 F.3d 644, 646 (5th Cir. 2018) ("Judicial review in the removal context is heavily circumscribed.").

In particular, the Supreme Court has described Subsection (b)(9) as an "unmistakable 'zipper' clause" that "channels judicial review" to courts of appeal. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) (holding that the exclusive jurisdiction clause of IIRIRA deprived the district court of jurisdiction over action in which undocumented individuals alleged that they had been targeted for deportation because of their affiliation with a politically

unpopular group, in violation of their constitutional rights); *see also Duron*, 898 F.3d at 647 (holding that district court did not have subject-matter jurisdiction to consider whether deportation of undocumented father with U.S. citizen children was unconstitutional because the issue emanates directly from a removal order).

Here, the parties appear to agree that Section 1252(a)(5) channels judicial review *of final removal orders* to the appropriate court of appeals. *See* Petitioners' Reply ("Reply") at 8; Respondents' Opposition ("Opposition") at 5. Congress's passage of the IIRARA—which eliminated district courts' jurisdiction over removal orders—and subsequent passage of the REAL ID Act—which clarified the import of the jurisdiction-channeling provision of the IIRARA— show Congress's intent in creating a three-tier process for determining an individual's removability: immigration court order of removal, then an appeal to the Board of Immigration Appeals, and then a Petition for Review ("PFR") with the appropriate U.S. court of appeals. *See* Reply at 6; Opposition at 2. However, because there has not been an order of removal in Petitioners' case, Section 1252(a)(5), which pertains to review of removal orders, does not govern the analysis here. *See* Reply at 9.

Instead, the key question is whether Petitioners' claims *arise from* their removal proceedings within the meaning of Section 1252(b)(9) and consequently whether this Court lacks jurisdiction to adjudicate Petitioners' claims. The Government argues that the INA jurisdiction-channeling provision of Section 1252(b)(9) channels *any* issue, whether legal or factual, arising from "any removal-related activity" to the PFR process. *See* Opposition at 2; *see also J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032–33 (9th Cir. 2016) (concluding that "the children's right-to-counsel [during immigration proceedings] claims must be raised through the PFR process because they 'arise from' removal proceedings"); *see also Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (opining that a claim challenging the procedure and substance of an agency determination are prohibited by the INA). The crux of Petitioners' argument is that their claims are separate from (or collateral to) the removal process because they are not challenging a removal order. *See* Reply at 8. Petitioners argue their challenge is to the *rules* of removal proceedings and therefore is not subject to the jurisdiction-channeling provisions of Section 1252. *Id.*

9

United States District Court
Northern District of California

1 At least two district courts have already assessed similar arguments and rejected them,
2 concluding that they lacked subject-matter jurisdiction in light of the INA. *See P.L. v. U.S.*
3 *Immigration & Customs Enf't*, No. 1:19-CV-01336 (ALC), 2019 WL 2568648, at *3 (S.D.N.Y.
4 June 21, 2019) (concluding that "[h]ow immigrants appear for removal proceedings [whether in
5 person or by VTC] constitutes part of the process of these proceedings" such that a district court
6 lacks jurisdiction to adjudicate such a challenge); *Flores Valle v. U.S. Immigration & Customs*
7 *Enf't*, No. 3:19-CV-2254-L-BN, 2019 WL 7756069, at *4 (N.D. Tex. Oct. 8, 2019), *report and*
8 *recommendation adopted sub nom. Valle v. U.S. Dep't of Homeland Sec.*, No. 3:19-CV-2254-L,
9 2019 WL 7207201 (N.D. Tex. Dec. 27, 2019) (concluding that the court lacked subject matter
10 jurisdiction because plaintiffs' claims regarding the use of VTC in their removal proceedings arose
11 from their removal proceedings).

12 In *Valle*, the court relied on the Supreme Court's plurality opinion in *Jennings v.*
13 *Rodriguez*, 138 S. Ct. 830 (2018) in concluding that "a challenge to the use of VTC in removal
14 proceedings is a challenge to a part of the [removal] process, as immigration judges use VTC to
15 conduct such proceedings and, ultimately, make a determination on removability." *Valle,* 2019
16 WL 7207201 at *3. In *Jennings*, an undocumented individual filed a habeas petition on behalf of
17 a class, seeking relief from prolonged detention without a bond hearing; the Supreme Court denied
18 relief but explained that there was no jurisdictional bar because Petitioners were not "challenging
19 any part of the process by which their removability will be determined." 138 S. Ct. at 841. The
20 *Valle* court contrasted *Jennings* and concluded that because a challenge to the use of VTC
21 challenged "part of the process" by which "removability will be determined," Section 1252(b)(9)
22 foreclosed jurisdiction. *Valle,* 2019 WL 7207201 at *3 (quoting *Jennings*, 138 S. Ct. at 841).

23 This Court agrees with *P.L.* and *Valle*. Further, it finds the Ninth Circuit's opinion in
24 *J.E.F.M.* controlling. In *J.E.F.M.*, minors sued the U.S. Attorney General (among others),
25 asserting a right to government-appointed counsel at removal proceedings. The Ninth Circuit
26 began its analysis by noting that Section 1252(b)(9) is "'breathtaking' in scope and 'vise-like' in
27 grip and therefore swallows up virtually all claims that are tied to removal proceedings."
28 *J.E.F.M.*, 837 F.3d at 1031 (quoting *Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007)). Thus, "[t]aken

together, § 1252(a)(5) and § 1252(b)(9) mean that any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the PFR process." *Id.* (citing *Viloria v. Lynch*, 808 F.3d 764, 767 (9th Cir. 2015) ("It is well established that this court's jurisdiction over removal proceedings is limited to review of final orders of removal.")).

However, the court also noted that "[Section] 1252(b)(9) has built-in limits. By channeling only those questions 'arising from any action taken or proceeding brought to remove an [undocumented person],' the statute excludes from the PFR process any claim that does not arise from removal proceedings. Accordingly, claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *Id.* at 1032 (citing *Aguilar*, 510 F.3d at 11 (reading "arising from" as "exclud[ing] claims that are independent of, or wholly collateral to, the removal process")). The court then gave several examples of claims that would be collateral to the process of removal. For instance, in *Nadarajah v. Gonzales*, 443 F.3d 1069 (9th Cir. 2006), the Ninth Circuit "held that an immigrant could challenge his five-year administrative detention by filing a petition for a writ of habeas corpus in district court," since he had "prevailed at every administrative level of review," "been granted asylum," and "yet was being held in detention 'without any established timeline for a decision on when he may be released from detention.'" *J.E.F.M., 837 F.3d at 1032* (quoting *Nadarajah*, 443 F.3d at 1071, 1075). The habeas claim had nothing to do with a final order of removal, as no such order existed because Nadarajah had prevailed in his immigration case; it pertained to his administrative detention. *Id.* Accordingly, the district court had jurisdiction because § 1252(b)(9) did not apply.

Second, in *Singh v. Gonzales*, 499 F.3d 969 (9th Cir. 2007), the Ninth Circuit "recognized that the district court had jurisdiction over the petitioner's ineffective-assistance-of-counsel claim that arose *after* his attorney failed to file a timely PFR." *J.E.F.M., 837 F.3d at 1032* (emphasis added) (citing *Singh*, 499 F.3d at 980). It permitted Singh's claim to proceed in district court because it arose after the final order of removal was entered, and therefore "could not have been raised before the agency." *Id.* (citing *Singh*, 499 F.3d at 980). However, the Ninth Circuit did *not* permit him to "raise a different ineffective assistance of counsel claim that arose before a final order of removal entered and that could and should have been brought before the agency." *Id.*

11

(citing *Singh*, 499 F.3d at 974). Furthermore, the Ninth Circuit contrasted the examples of *Nadarajah* and *Singh* with the court's subsequent decision in *Martinez v. Napolitano*, 704 F.3d 620 (9th Cir. 2012), which concluded (in the context of suit challenging a BIA denial of asylum on the grounds that it was arbitrary and capricious) that "[w]hen a claim by an [undocumented person], however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)." *J.E.F.M.*, 837 F.3d at 1032 (quoting *Martinez*, 704 F.3d at 623).

After analyzing these cases, the court in *J.E.F.M.* concluded that "the children's right-to-counsel claims must be raised through the PFR process because they 'arise from' removal proceedings . . . . [and] are not independent or ancillary to the removal proceedings. Rather, these claims are bound up in and an inextricable part of the administrative process." *J.E.F.M.*, 837 F.3d at 1032–33. It quoted with approval the First Circuit's decision in *Aguilar*, which found that, "[b]y any realistic measure, the [individual]'s right to counsel is part and parcel of the removal proceeding itself . . . . [A]n [individual]'s right to counsel possesses a direct link to, and is inextricably intertwined with, the administrative process that Congress so painstakingly fashioned." *Id.* at 1033 (quoting *Aguilar*, 510 F.3d at 13).

Likewise, here, the use of VTC "arises from" the removal proceedings. Petitioners claims are not ones that arose *after* a final order of removal was entered, as in *Singh*; nor is this a case in which no removal order was ever issued or going to issue, as in *Nadarajah*. To the contrary, rather than being independent of or ancillary to the removal proceeding, Petitioners' claims challenge the procedure utilized *within* their immigration proceeding; the claims are "inextricably intertwined with, the administrative process" as in *J.E.F.M.* As a result, Section 1252(b)(9) deprives this Court of subject-matter jurisdiction.

Despite this precedent, Petitioners' argue that the Ninth Circuit's recent decision in *East Bay Sanctuary Covenant v. Trump* indicates that this Court has jurisdiction over their claims. *See* Reply at 8. In *East Bay Sanctuary*, plaintiffs challenged an interim final rule and presidential proclamation that made certain individuals ineligible to apply for asylum if they did not arrive at a United States port of entry. *See East Bay Sanctuary*, 950 F.3d 1259–60. In addressing the

12

Government's contention in *East Bay Sanctuary* that Section 1252(b)(9) divested the court of jurisdiction, the Ninth Circuit relied on *Martinez* and *J.E.F.M.* in holding that: (1) Section 1252(b)(9) only "govern[s] judicial review of removal orders or *challenges inextricably linked with actions taken to remove migrants from the country*," and (2) "[t]he purpose of these claim-channeling provisions is to 'limit all [individual]s to one bite of the apple with regard to challenging an order of removal.'" *East Bay Sanctuary*, 950 F.3d at 1269 (quoting *Martinez*, 704 F.3d at 622) (emphasis added). The court explained that the rule challenged in *East Bay Sanctuary* was not inextricably "linked with removal orders" because it "govern[ed] eligibility for asylum," and an individual who was affected by the asylum eligibility rule might "never encounter any of the statutory provisions governing removal." *Id.* at 1269–70. "At best," the Ninth Circuit concluded, "the law governing asylum is collateral to the process of removal." *Id.* at 1269. Consequently, the Ninth Circuit found that the INA jurisdiction-channeling provisions did not preclude district court jurisdiction over the claim at issue. *Id.* at 12.

Petitioners argue that their case is similar to *East Bay Sanctuary* because Petitioners are "challenging a rule and perhaps one or more unknown and unpublished sub-regulations" and are not seeking to challenge a final removal order. Reply at 10. Petitioners' say they are "in no way asking to enjoin the removal proceeding or even impede it." *Id.* 11–12. Thus, they contend their claims do not *arise from* their removal proceedings. *See id.* at 10. Petitioners emphasize that the purported purpose of the jurisdiction-channeling provisions of the INA is to "limit all [individual]s to one bite of the apple with regard to challenging an order of removal," Reply at 9 (quoting *Martinez*, 704 F.3d at 622), and argue that their claim is not an attempt to get "two bites of the apple" because no removal order has issued in their pending immigration case. *See* Reply at 9.

While *East Bay Sanctuary* noted Congress's intent to limit individuals challenging their removal orders to "one bite of the apple," it did so explicitly in the context of challenges that are collateral to—as opposed to arising out of—removal orders. *East Bay Sanctuary*, 950 F.3d at 1269 (explaining that district court review of a rule limiting asylum eligibility is consistent with the purposes of the INA's jurisdictional limitations because it does not undermine Congress's desire to limit individuals to a single appeal of removal orders or other actions inextricably linked

with removal).

Petitioners' claims are unlike the challenges raised in *East Bay Sanctuary*. The policy in *East Bay Sanctuary* affected an individual's eligibility to apply for asylum. The impact of the policy was felt by affected individuals *before* a removal proceeding commenced, and—as noted above—it would also affect individuals who never ended up in removal proceedings. The rule was preliminary to (and thus collateral to) any removal hearing. It did not "arise" from a removal proceeding.

Here, in contrast, Petitioners are challenging procedures that pertain directly to the ongoing conduct of Respondents in respect to Petitioners' removal proceedings. Petitioners seek to enjoin the use of VTC in their removal proceedings, a procedure which is part and parcel of the hearing. Likewise, their challenge to the super-expedited scheduling of removal proceedings using VTC is also unlike *East Bay Sanctuary*. Those challenges—which concern the scheduling, timing, and the use of VTC—pertain specifically to and *arise from* their removal proceedings; they are not independent of or ancillary to them.

As a result, Petitioners' challenges must be raised through the PFR process after exhaustion of administrative proceedings, channeled to the Ninth Circuit as prescribed by Section 1252. *See* 8 U.S.C. § 1252(b)(9). This Court lacks subject-matter jurisdiction over this case.

2. Request for Judicial Notice

On March 23, 2020, more than six weeks after the filing of their Motion for a Preliminary Injunction, Petitioners' Counsel filed a Motion for Judicial Notice. *See* Docket No. 24. Attached to that Motion were three exhibits that Petitioners' Counsel requested the Court judicially notice. Having reviewed the Motion and the exhibits, the Court finds them most relevant to the merits of Petitioners' Motion for a Preliminary Injunction and because the Court does not reach the merits of that Motion, it **DENIES** Petitioners' Motion for Judicial Notice as moot.

3. Alternative Request for Habeas Relief

In their Reply brief, Petitioners raise for the first time a request that the Court construe their petition as a writ of habeas corpus if it finds it would otherwise lack jurisdiction. Reply at 14. However, "[i]ssues raised for the first time in the reply brief are waived." *Williams-Windom*

14

*v. Potter*, 312 F. App'x 64, 66 (9th Cir. 2009) (quoting *Bazuaye v. INS,* 79 F.3d 118, 120 (9th Cir. 1996)); *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) (quoting *Smith v. Marsh,* 194 F.3d 1045, 1052 (9th Cir. 1999)) ("arguments not raised by a party in its opening brief are deemed waived").

Even if this argument were not waived, it is without merit. In advancing this request, Petitioners primarily rely on *Nadarajah* and attempt to rely on the portion of *Nadarajah* that states: "By its terms, the jurisdiction-stripping provision does not apply to federal habeas corpus petitions that do not involve final orders of removal. Here, as we have noted, there is no final order of removal." Reply at 14 (quoting *Nadarajah*, 443 F.3d at 1075–76). What Petitioners ignore, however, is the fact that Nadarajah "could challenge his five-year administrative detention by filing a petition for a writ of habeas corpus in district court" because he had "prevailed at every administrative level of review," "been granted asylum," and "yet was being held in detention 'without any established timeline for a decision on when he may be released from detention.'" *Nadarajah*, 443 F.3d at 1071, 1075. The petitioner was not challenging the process of removal. Indeed, the petitioner in *Nadarajah* had already been granted asylum; Section 1252 did not bar his habeas petition because there was no order of removal to challenge (and there never would be).

Here, by comparison, Petitioners' are in the midst of their immigration proceedings and their challenge pertains to rules and procedures that are part and parcel of the removal process.

Section 1252(b)(9) specifically states: "Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 161 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact." 28 U.S.C. § 1252(b)(9), *i.e.*, questions arising out of removal proceedings. Habeas petitions are not categorically excepted from § 1252(b)(9).

///

///

///

///

## IV. CONCLUSION

Petitioners' application for asylum arises from the circumstances that may well be compelling. Nonetheless, this Court must **DENY** Petitioners' Motion for a Preliminary Injunction and **DISMISS** this suit because this Court lacks jurisdiction over the matter. It also **DENIES** Petitioners' Motion for Judicial Notice.

This order disposes of Docket Nos. 4 and 24.

**IT IS SO ORDERED**.

Dated: March 30, 2020

                                     EDWARD M. CHEN
                                     United States District Judge